UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

TREVOR CURTIS, individually, and
and as a representative of a Class of
Participants and Beneficiaries of the
Komatsu U.S. Pension Plan,

    Plaintiff,
 v.

KOMATSU U.S. PENSION PLAN,

 and

KOMATSU PENSION AND INVESTMENT
COMMITTEE,

    Defendants.

Case No. 20-cv-1611

**CLASS ACTION AMENDED COMPLAINT FOR CLAIMS UNDER 29 U.S.C. §§ 1132(a)(l)(B), 1132 (a)(3)**

---

## AMENDED COMPLAINT

COMES NOW Plaintiff, Trevor Curtis, individually and as representative of a Class of Participants and Beneficiaries of the Komatsu U.S. Pension Plan (the "Plan"), by his counsel, WALCHESKE & LUZI, LLC, and ROTHMAN GORDON, P.C., for a claim against Defendants, and alleges and asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

  1.  Plaintiff Trevor Curtis ("Curtis"), a retired former employee of Komatsu Mining Corporation ("KMC"), brings two alternative claims for relief against Defendants Komatsu U.S Pension Plan (the "Plan") and the Komatsu Pension and Investment Committee ("Pension Committee").

2. First, Curtis brings an individual claim for pension benefits against the Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), §502(a)(1)(B) (29 U.S.C. §1132(a)(1)(B)), for wrongly determining the amount of his pension benefits due to him under the Plan.

3. Second, Curtis brings this action in the alternative for breach of fiduciary duty pursuant to ERISA, §502(a)(3) (29 U.S.C. §1132(a)(3)), as a representative of similarly-situated participants and beneficiaries of the Plan and seeks declaratory and/or injunctive relief against the Plan Administrator and fiduciary, the Pension Committee, in relation to its systematic policy of wrongfully denying Plan participants and beneficiaries their "Additional Benefits" under the Plan.

4. Curtis alleges that during the putative Class Period (February 5, 2015, through the date of judgment), Defendant Pension Committee, as fiduciary of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), had an obligation, characterized as the highest known to law, to fairly administer the Plan and to act with a duty of loyalty and duty of care in providing pension benefits under the Plan.

5. Defendant Pension Committee used a pension benefit determination process that resulted in denials of "Additional Benefits" to Curtis and members of the Class. It breached its fiduciary duties under ERISA by knowingly and intentionally omitting material information from its summary Plan documents and sending false plan communications to Curtis and members of the Class with regard to their "Additional Benefits" under the Plan.

6. Because Defendants have violated the terms of the Plan in unlawfully denying claimed pension benefits to Curtis and/or have breached their fiduciary duties under ERISA to Curtis and members of the Class, Curtis seeks to enforce the terms of the Plan under ERISA

§502(a)(1)(B) or, alternatively, and as a representative of the Class, to obtain equitable relief to redress the Defendant Pension Committee's fiduciary breach under ERISA §502(a)(3).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. §1331 and pursuant to 29 U.S.C. §1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. §1001 et seq.

8. This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process. Additionally, the Plan states that all such actions under the Plan shall be brought in this Court.

9. Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District. Venue is also proper within this district pursuant to the terms of the Komatsu U.S. Pension Plan, which provides for exclusive jurisdiction in the U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division, for any claims for benefits under Section 502 of ERISA.

10. In conformity with 29 U.S.C. §1132(h), Curtis served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

11. Plaintiff, Trevor Curtis, is an adult individual who resides and is domiciled at 139 Aberdeen Drive, Cranberry, Pennsylvania, 16066, and is a participant in the Plan under ERISA §3(7) (29 U.S.C. §1002(7)). He is a former employee of the Komatsu Mining Corp. ("KMC").

12. KMC, which is engaged in the business of providing equipment, systems, and solutions used by companies to extract minerals for developing infrastructure, technology and consumer products. KMC sponsors the Komatsu U.S. Pension Plan (the "Plan").

13. Defendant Plan constitutes an "employee pension benefit plan" as defined by ERISA §3(2) (29 U.S.C. §1002(2)). Its principal place of business is 135 S. 84th Street Milwaukee, WI, 53214.

14. Defendant Komatsu Pension and Investment Committee ("Pension Committee") is the plan administrator and named fiduciary of the Plan and is located at 135 S. 84th Street Milwaukee, WI, 53214.

15. The Pension Committee is a fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. §1002(21)(A). The Pension Committee has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. §1102(a). The Pension Committee has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

16. The Plan is a "defined benefit" pension plan under 29 U.S.C. §1002(35), meaning that a specified amount of pension benefits under the Plan are guaranteed at retirement.

# FACTUAL BACKGROUND AND RELEVANT PLAN PROVISIONS

17. Curtis was born in April 1950 and began working for a predecessor of the Komatsu Mining Corporation ("KMC") on December 18, 1974. He remained an employee of KMC until his retirement on July 19, 2019, for a total of 45 years of employment with KMC and its predecessors.

18. Pursuant to Section 1.5(vv) & (ww) of the Plan (excerpts attached hereto as Exhibit A), Curtis's normal retirement age is 65, and his Normal Retirement Date is the first day of the month coinciding with or next following the day on which he attained the age of 65. Because Curtis was born in April 1950, his Normal Retirement Date is May 1, 2015.

19. Because Curtis retired on July 19, 2019, his "Late Retirement Date" was August 1, 2019. His "Benefits Commencement Date" was January 1, 2020.

20. During his employment, Curtis participated in, and accrued benefits under, both Supplement 4 of the Plan (known as the Joy Technologies Inc. Pension Plan for Salaried and Non-Bargaining Hourly Employees), and Supplement 6 of the Plan (known as the American Longwall Inc. Retirement Plan).

21. In correspondences of July 19 and July 25, 2019, the Pension Committee informed Curtis in writing that because he planned to retire after his Normal Retirement Date, he was entitled to an "Additional Benefit" to reflect the fact that during the period from his Normal Retirement Date to his Benefit Commencement Date, he was not paid Plan benefits because he continued to work for KMC.

22. The two documents that the Plan sent to Curtis, referred to by Defendant Pension Committee as "Retirement Kits," and sent to similarly-situated employees in similar circumstances, expressly state the following:

> Additional Benefit Due to Late Commencement–**an additional benefit will be payable to you** because your Benefit Commencement Date is after your Normal Retirement Date. The Additional Benefit is the **sum of payments which would have been made had you started the monthly benefit on your Normal Retirement Date**, plus interest through your Benefit Commencement Date.

Letter from Komatsu Mining Corp. Benefits Department to T. Curtis, re: Your Pension Benefits under the Komatsu U.S. Pension Plan 5 (July 19, 2019) (attached hereto as Exhibit B) (emphasis added); Letter from Komatsu Mining Corp. Benefits Department to T. Curtis, re: Your Pension Benefits under the Komatsu U.S. Pension Plan 5 (July 25, 2019) (attached hereto as Exhibit C) (emphasis added). These documents are not ministerial.

23. Both of the July 2019 Retirement Kits describe the "Additional Benefit" as one of your "payment options available *under the Plan*." (emphasis added)

24. Both of the July 2019 Retirement Kits note that they contain: "important information about your pension benefits . . .," and both note that payments available are "described below."

25. Although the Retirement Kits contain benefit election forms, the "Additional Benefit" language is not included as part of the benefit election forms. Instead, the "Additional Benefit" language is found separately in a section labelled, "Notice 1 – Descriptions of Payment Options," which refer to the options thereunder.

26. Although the benefit elections form in the Retirement Kit are labelled, "Information Only," Notice 1, which includes the "Additional Benefits" language, is not so labelled. According to the express Retirement Kit language, Curtis qualified for this "Additional Benefit" because his Benefit Commencement Date (January 1, 2020) was well after his Normal Retirement Date (May 1, 2015).

27.  The "Additional Benefit" is different from, and in addition to, what participants who retire after 65 receive actuarially as increased monthly pension payments to make up for payments they did not receive in working past age 65. Those actuarially increased benefits are separately provided for under the Section 4.6 of the Plan (see Exhibit A):

> **4.6  Reemployment; Employment After Normal Retirement Date**
>
> (c)  If a Participant remains employed after his or her Normal Retirement Date, the Participant's benefit shall not become payable until the Participant's Late Retirement Date. Such a Participant's Accrued Benefit, each year he or she remains employed, shall be increased by the greater of:
>
> (i)  The increase in the Participant's Accrued Benefit as a result of his or her additional Service; or
>
> (ii)  The actuarial adjustment to the Accrued Benefit to reflect the value of the Participant's benefit that otherwise would have been payable to the Participant during that period.

28.  The Plan SPD (excerpts attached hereto as Exhibit D) similarly sets forth these actuarially-increased pension payments described as "Late Retirement Benefits":

> You may decide to work beyond age 65 and retire at a later date. If you do, you will not receive pension payments while you remain actively employed by the Company. Your late retirement benefit will be determined using the pension formula described above. However, when you do retire, your benefit is based on your Final Average Earnings and total Benefit Service (including your years of Benefit Service after age 65 but not after the Benefit Freeze Date) when you actually retire. Your late retirement benefit also will be actuarially adjusted to reflect the fact that your benefit is not paid while you remain actively employed by the Company.

29.  The "Additional Benefit" is also different from, and in addition to, Plan provisions governing the retroactive annuity starting date ("RASD") in Section 5.5(c) of the Plan (see Exhibit A), which provide a participant with the sum of the missed payments, plus interest, between the RASD and the actual benefit commencement date.

30. The RASD was paid in a one-time lump sum to Curtis in the amount of $35,212.49 for pension amounts based on an August 1, 2019 RASD and a January 1, 2020 annuity starting date.

31. The Supplements to the Plan also support Curtis' entitlement to other forms of enhanced benefits. Curtis' accrued pension benefit is explained in Supplement 4 to the Plan (the Joy Technologies Inc. Pension Plan for Salaried and Non-Bargaining Hourly Employees), and in Supplement 6 to the Plan (the American Longtail, Inc. Retirement Plan).

32. Supplement 4 provides enhancements for retirement after the Normal Retirement Date (excerpts attached hereto as part of Exhibit A):

> **§3.8 Late Retirement Benefit.**
>
> (c) In the case of a Covered Employee who commenced participation under this Supplement 4 or under the Predecessor Plan after age 65, such Covered Employee's Normal Retirement Accrued Benefit shall be equal to 2.0% of his Final Average Compensation multiplied by his years of Benefit Service as Covered Employee . . . .
>
> (e) Notwithstanding anything in this Section 3.8 to the contrary, for the avoidance of doubt, effective on or after May 1, 2012, if a Covered Employee remains employed after his or her Normal Retirement Date, such Covered Employee's Accrued Benefit shall not become payable until his or her Late Retirement Payment Date. Such Covered Employee's Accrued Benefit, frozen as of April 30, 2012 . . ., shall be increased to reflect the Actuarial Equivalent value of the Covered Employee's benefit that otherwise would have been payable to the Covered Employee at his or her Normal Retirement Date.

33. Supplement 6 also provides enhancements for retirement after the Normal Retirement Date (excerpts attached hereto as part of Exhibit A):

> **3.2 Late Retirement.**
>
> When a Covered Employee retires on a date which is at least one month after his Normal Retirement Date, his monthly retirement income shall be an amount equal to the greater of his Accrued Benefit calculated on that date or his Accrued Benefit calculated as of his Normal Retirement Date,

multiplied by his late retirement factor, determined as follows: [setting forth pension multiplier based on the number of years payments begin after Normal Retirement Date].

34. In July 2019, Curtis contacted the Pension Committee and requested the "Additional Benefit" because he was qualified for such a benefit under the Plan, as his Benefit Commencement Date was well after his Normal Retirement Date.

35. Curtis spoke with KMC's Supervisor of Employee Benefits, Kevin Tschudy, in late July 2019. In an email of August 7, 2019, Tschudy stated that the "Additional Benefit" language in the Retirement Kits, "should be adjusted to make it more applicable to the specific retirement situation" and noted that the Additional Benefit language which speaks to late retirement was "more geared to participants that terminated prior to age 65."

36. Tschudy's statement that the "Additional Benefit" language was "geared to participants that terminated prior to age 65" is blatantly false as the "Additional Benefit" language in the Retirement Kits does not mention those who terminated their employment before their Normal Retirement Date, and instead makes clear that the benefit applies to those who have a "Benefit Commencement Date" *after* the "Normal Retirement Date."

37. Tschudy and the Pension Committee have utilized this same blatantly false explanation to systematically deny "Additional Benefits" promised to similarly-situated Plan participants despite clear language in the Retirement Kits that such "Additional Benefits" are provided "under the Plan" under circumstances that apply to Curtis and members of the Class.

38. Tschudy's verbal and written communications with Curtis establish that Tschudy, on behalf of the Pension Committee, intended to mislead and deceive Curtis and members of the Class and that the Pension Committee had implemented a wrongful scheme of knowingly and

intentionally misleading employees about "Additional Benefits," to which they are entitled when they retire after their Normal Retirement Date.

39. Defendant Pension Committee has breached its fiduciary duties by designing a pension determination process regarding "Additional Benefits" that interferes with its employees' retirement security.

40. These knowing and intentional misrepresentations by Mr. Tschudy and the Pension Committee caused Curtis and members of the Class significant loss of promised pension benefits.

41. Because Curtis's benefit election form improperly left out the ability to elect for the "Additional Benefit," he was forced to submit the form without election for the "Additional Benefit" on August 13, 2019. However, Curtis did not waive his right to those benefits, and on October 16, 2019, Curtis made a formal, initial claim for those "Additional Benefits" pursuant to Article 12.2 of the Plan.

42. Because Curtis worked 51 months with KMC beyond his Normal Retirement Date, Curtis asked for the following "Additional Benefits" in his claim for benefits:

> Joy Global Pension Plan (Supplement 4): $4,500 x 51 months = $229,500
> American Longwell Retirement Plan (Supp. 6): $997 x 51 months = $50,847
>
> Total Additional Benefit Owed: **$280,347**

43. Curtis began receiving pension benefit payments under the Plan on January 1, 2020, when he was 69 years old, but has never received the "Additional Benefits," to which he was entitled.

44. On April 13, 2020, Matthew Stuart, Claims Fiduciary, on behalf of the Claims and Appeals Subcommittee of the Komatsu Pension and Investment Committee, denied Curtis's initial claim for "Additional Benefits" (attached hereto as Exhibit E).

45. Pursuant to the Plan's internal appeals process, Curtis, on May 26, 2020, challenged denial of his claim for "Additional Benefits" before the Claims and Appeals Subcommittee of the Pension Committee, in its capacity as the appeals fiduciary for the Plan.

46. On September 23, 2020, the same individual, Matthew Stuart on behalf of the Claims and Appeals Subcommittee of the Pension Committee denied Curtis' appeal for "Additional Benefits" (attached hereto as Exhibit F).

47. The September 23, 2020, appeal denial letter again falsely maintained that the "Additional Benefit" language "was intended for participants *who terminated employment before their Normal Retirement Date* and commenced payment after the Normal Retirement Date." (emphasis added).

48. This statement by the Appeal Committee was a knowing and intentional misrepresentation because the "Additional Benefit" language nowhere states that it applies to participants who terminated employment before their Normal Retirement Date, but rather that Curtis will be provided an "Additional Benefit" because his Benefit Commencement Date was after his Normal Retirement Date.

49. On the same date that Defendant Pension Committee denied Curtis' appeal, it closed the administrative record and determined that all administrative remedies had been exhausted. Thus, pursuant to ERISA §503 (29 U.S.C. §1133) and 29 C.F.R. § 2560.503-1, all required internal appeals for denied benefits have been exhausted by Curtis.

## CLASS ACTION ALLEGATIONS

50. 29 U.S.C. §1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action individually, and on behalf of others similarly-situated, to enforce a breaching fiduciary's liability.

51. In acting in this representative capacity, Curtis seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan entitled to "Additional Benefits." Curtis seeks to certify, and to be appointed as representatives of, the following Class:

> *All participants and beneficiaries of the Komatsu U.S. Pension Plan entitled to "Additional Benefits" under the Plan beginning six (6) years before the commencement of this action and running through the date of judgment, excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan.*

52. Based on the Plan's 2018 5500 Form, the Class includes approximately 500-1,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

53. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendant Pension Committee owed fiduciary duties to Curtis and members of the Class and took the actions and omissions as alleged. Common questions of law and fact include but are not limited to the following:

- Whether Defendant Pension Committee is a fiduciary liable for the remedies provided by 29 U.S.C. § 1132(a)(3);

- Whether Defendant Pension Committee breached its fiduciary duties to Curtis and members of the Class by systematically denying promised "Additional Benefits" under the Plan;

- What Plan-wide equitable and other relief the Court should impose in light of Defendant Pension Committee's breach of fiduciary duty.

54. Curtis's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Curtis was a participant during the time period at issue and all members of the Class as participants of the Plan are equally entitled to "Additional Benefits" because their Benefit Commencement Dates was after their Normal Retirement Dates.

55. Curtis will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he is a participant in the Plan owed Additional Benefits during the Class Period, has no interests that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

56. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant Pension Committee concerning its discharge of fiduciary duties under 29 U.S.C. § 1132(a)(3); and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for participants and beneficiaries would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

57. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

58. Curtis's attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

59. The claims asserted in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as an administrative procedure for participants and

beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of similarly-situated participants and beneficiaries for breaches of fiduciary duty.

60. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

### FIRST CLAIM FOR RELIEF
### Unlawful Denial of Benefits under ERISA, as Amended
### (Curtis against Defendant Plan – Claim for Benefits under § 502(a)(1)(B))

61. Curtis incorporates and re-alleges by reference each of the foregoing paragraphs as if fully set forth herein.

62. Under the terms of the Plan, Defendants agreed with Curtis on his late retirement date (August 1, 2019), and his pension benefits commenced on January 1, 2020.

63. As part of this retirement agreement, Defendant Pension Committee agreed to provide Curtis with "Additional Benefits" "under the Plan."

64. The Plan defined "Additional Benefits Due to Late Commencement" as "an additional benefit . . . payable to you because your Benefit Commencement Date is after your Normal Retirement Date," and that the "Additional Benefit is the sum of payments which would have been made had you started the monthly benefit on your Normal Retirement Date, plus interest through your Benefit Commencement Date."

65. Although Curtis's Benefit Commencement Date was after his Normal Retirement Date, and therefore was eligible for "Additional Benefits," Defendant Plan failed and refused to provide these "Additional Benefits" to Curtis, and therefore, has breached the terms of the Plan.

66. Defendant Plan is in violation of ERISA §502(a)(1)(B) by wrongly determining the amount of his pension benefits under the Plan and Curtis therefore seeks to enforce the terms of the Plan and receive the appropriate amount of "Additional Benefits" to which he is entitled.

## SECOND CLAIM FOR RELIEF
### Breach of the Duty to Inform Under ERISA, as Amended
**(Class against Defendant Pension Committee – Class Claim under 29 U.S.C. § 1132(a)(3))**

67. Curtis incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

68. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

69. An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply with the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

70. Defendant Pension Committee acted at all times relevant hereto and continues to act as an ERISA fiduciary with respect to the administration of and claim decisions for claims for pension benefits under the Plan; and exercises discretionary authority and/or control with respect

to the management of the Plan, the management and/or disposition of the assets of the Plan, and in the administration of the plan within the meaning of ERISA §3(21)(A)(i) (29 U.S.C. §1002(21)(A)(i)).

71. Defendant Pension Committee had a duty not to misinform and a duty to convey complete and accurate information concerning the circumstances under which Curtis and similarly situated members of the Class would be entitled to the "Additional Benefit" under the Plan based on their later retirement dates.

72. Defendant Pension Committee breached its fiduciary duties by: (1) intentionally and knowingly omitting material information from the Plan, SPD, and other Plan materials, regarding the circumstances under which the "Additional Benefit" should have been granted; and (2) sending out written plan communications to Curtis and members of the Class that knowingly and intentionally misled and misinformed them with regard to their entitlement to "Additional Benefits."

73. This systematic and wrongful scheme of intentionally and knowingly omitting material information and sending out misleading plan communications harmed Curtis and members of the Class because they suffered an economic injury by receiving a lesser amount of pension benefits than promised under the Plan.

74. By failing to communicate this necessary and relevant information and otherwise omitting material information about how "Additional Benefits" operated under the Plan, Defendant Pension Committee, acting in a fiduciary capacity, violated ERISA §404(a)(1)(A) & (B) (29 U.S.C. §1104(a)(1)(A) & (B)), by not acting in the best interests of, or with the duty of care towards, Curtis and Members of the Class.

75. As a result of these breaches, Curtis and members of the Class are entitled under ERISA §502(a)(3) to appropriate equitable relief, including injunctive and declaratory relief. Such relief includes reformation of the terms of the Plan in order to remedy the false and misleading information Defendant Pension Committee provided, a surcharge against Defendant Pension Committee, and/or an order establishing a constructive trust and/or disgorging any profits.

76. More specifically, Curtis and members of the Class request an injunction requiring Defendant Pension Committee to retract all of its categorical denials of "Additional Benefits" to those similarly-situated to Curtis and reevaluate all "Additional Benefit" claims during the Class Period.

**WHEREFORE**, Curtis prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. A determination that Defendant Plan acted arbitrarily and capriciously in denying Curtis "Additional Benefits" under the terms of the Plan;

B. Entry of judgment in Curtis's favor and against the Plan, and ordering the Plan to pay benefits for all wrongfully denied claims for "Additional Benefits" in an amount equal to the contractual amount of benefits due;

C. A Declaration that Defendant Pension Committee has breached its fiduciary duties under ERISA by failing to accurately inform Curtis and members of the Class about their entitlement to "Additional Benefits," causing them economic injuries in the form of less generous benefits;

D. An Order that the Plan be reformed to include the promised "Additional Benefits" and an order that Defendants pay the benefits accordingly;

E. Imposition of a surcharge against the breaching fiduciaries in the amount of benefits lost by reason of providing false, misleading, and inaccurate plan information, in connection with the Additional Benefit under the Plan;

F. An Order requiring Defendant Pension Committee to retract all of its categorical denials of "Additional Benefits" to those similarly-situated to Curtis and to reevaluate all "Additional Benefit" claims during the Class Period;

G. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against Defendants as necessary to effectuate said relief, and to prevent Defendants' unjust enrichment;

H. An Order enjoining Defendants from any future violation of their ERISA fiduciary responsibilities, obligations, and duties, with regard to the "Additional Benefits" that participants and beneficiaries are entitled to under the Plan;

I. Entry of an order requiring Defendants to pay pre-judgment and post-judgment interest on all wrongfully denied benefits at an appropriate interest rate;

J. Issuance of an award of disbursements and expenses for this action, including reasonable attorneys' fees and costs under ERISA §502(g)(1) (29 U.S.C. §1132(g)(1)); and

K. An award of any and all other appropriate penalties, damages, interest, attorneys' fees, and equitable relief as determined by the Court.

Dated this 5th day of February 5, 2021

s/ **_Paul M. Secunda_**
WALCHESKE & LUZI, LLC
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Paul M. Secunda, State Bar No. 1074127

235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com

Samuel J. Cordes
ROTHMAN GORDON, P.C.
310 Grant Street
Third Floor - Grant Building
Pittsburgh, PA 15219
Telephone: 412-338-1163
Fax: 412-246-1763
Email: SJCordes@rothmangordon.com

Counsel for Plaintiff