

**Komatsu Mining Corp. Group**
135 S. 84th St.
Milwaukee, WI 53214
Phone: 1-800-797-6645
Fax: 1-414-509-6675

**Employee Benefits**

EXHIBIT E

April 13, 2020

**VIA FEDERAL EXPRESS AND FACSIMILE (412.246.1763)**

Samuel J. Cordes, Esq.
Rothman Gordon P.C.
310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219

Re: Determination Regarding Mr. Trevor Curtis's Benefits Under the
Komatsu U.S. Pension Plan and the Joy Global Supplemental Pension Plan

Dear Mr. Cordes:

The purpose of this letter is to inform you that as the first-level claims fiduciary acting on behalf of the Claims and Appeals Subcommittee of the Komatsu Pension and Investment Committee (the "Claims Fiduciary"), I have reviewed the claim for benefits under the Komatsu U.S. Pension Plan and the Joy Global Supplemental Pension Plan (collectively, the "Plans") that you submitted on behalf of Trevor Curtis, which was received on October 16, 2019 and clarified on March 2, 2020 (such claim, "Mr. Curtis's Claim" or the "Claim"). As explained in more detail below, after careful consideration of Mr. Curtis's Claim and the terms of the Plans, it has been determined that Mr. Curtis is not entitled to receive the additional benefits that are the subject of the Claim. Accordingly, Mr. Curtis's Claim is denied.

## BACKGROUND

Mr. Curtis was born on April 25, 1950 and began working for a predecessor to the Komatsu Mining Corp. (the "Company") on December 19, 1974. Mr. Curtis's employment ended on July 19, 2019. During his employment, Mr. Curtis accrued a benefit under what are now Supplement 4 (the Joy Technologies Inc. Pension Plan for Salaried and Nonbargaining Hourly Employees) and Supplement 6 (the American Longwall, Inc. Retirement Plan) of the Komatsu U.S. Pension Plan (the "Plan"). Mr. Curtis also accrued a benefit under the Joy Global Supplemental Pension Plan (the "Supplemental Plan"), which is an unfunded, nonqualified-deferred compensation plan that is subject to Section 409A of the Internal Revenue Code of 1986, as amended (the "Code").

Prior to his termination of employment, Mr. Curtis received two separate retirement kits from the Plan, one for Supplement 4 and one for Supplement 6 (collectively, the "Retirement Kits"). The Retirement Kits are identical in all respects relevant to the Claim. The Retirement Kits presented Mr. Curtis's retirement benefits and included benefit election forms for Mr. Curtis to complete and return to the Komatsu Mining Corp. benefits department (the "Benefits Department") indicating the annuity starting date he wished to use for the commencement of his benefits and the form of benefit he wished to elect. Mr. Curtis also received a quote letter for the Supplemental Plan to complete and return to the Benefits Department. In accordance with the terms of the Supplemental Plan, the quote letter for the Supplement Plan did not include an option to make an election with respect to the timing of his benefit.

Prior to submitting his completed benefit election forms, Mr. Curtis made inquiries to Mr. Kevin Tschudy, a member of the Benefits Department (the "Plan Representative") regarding the following paragraph in the Retirement Kits:[1]

> **Additional Benefit Due to Late Commencement** – an additional benefit will be payable to you because your Benefit Commencement Date is after your Normal Retirement Date. The Additional Benefit is the sum of payments which would have been made had you started the monthly benefit on your Normal Retirement Date, plus interest through your Benefit Commencement Date.

Based on the foregoing paragraph, Mr. Curtis asked if he was owed an additional benefit equal to the sum of the monthly payments he would have received for the period commencing May 1, 2015—his "Normal Retirement Date" under the Plan—and ending on the date his benefit payments commenced (the "Additional Benefit"). In response to the inquiries, the Plan Representative informed Mr. Curtis, verbally and at least once by email (on August 7, 2019), that the language in the Retirement Kits was of a general nature and did not apply to his benefit. Specifically, Mr. Curtis was informed that the language was intended for participants who terminated employment prior to their Normal Retirement Date but commenced payment after their Normal Retirement Date. Mr. Curtis was informed that, because he remained employed after his Normal Retirement Date, he was not eligible for the Additional Benefit. Instead, Mr. Curtis's monthly benefit amounts were actuarially increased to reflect his later starting date.

Mr. Curtis submitted completed benefit election forms, dated August 13, 2019, using a January 1, 2020 annuity starting date. Mr. Curtis elected to have his Plan benefit paid in the form of a qualified joint and 50% survivor annuity, with his wife as the joint annuitant, and with benefit payments commencing as of January 1, 2020 in the following amounts:

| | |
|---|---|
| Supplement 4 (Joy Retirement Income Plan): | $5,961.31/month[2] |
| Supplement 6 (American Longwall Retirement Plan): | $1,142.57/month |

---

[1] The quote letter for the Supplemental Plan did not include this provision.

[2] This was the amount Mr. Curtis was entitled to receive after up-to-date optional form factors (which are updated annually) were applied to his benefit. As was explained in the Retirement Kit, the Supplement 4 monthly benefit amount was an interim amount that would be adjusted when the applicable optional form factors were available.

In addition, Mr. Curtis submitted a completed form electing the form of benefit payment for his Supplemental Plan benefit, also dated August 13, 2019. Mr. Curtis elected to have his Supplemental Plan benefit paid in the form of a qualified joint and 50% survivor annuity, with his wife as the joint annuitant, which would become payable in February 2020 in accordance with the terms of the Supplemental Plan.[3]

On October 16, 2019, the Benefits Department received your letter dated October 11, 2016 submitting the initial Claim (the "Claim Letter"). The Claim Letter referenced the language in the Retirement Kits quoted above and stated that, because Mr. Curtis commenced his pension benefits after his Normal Retirement Date, he was owed the Additional Benefit. According to the Claim Letter, the Additional Benefit generally is equal to the sum of the monthly benefits that would have been paid to him from his Normal Retirement Date of May 1, 2015, to the date his pension benefits commenced, which Mr. Curtis calculated to be approximately $296,838. The Claim Letter also included $25,920 as the Additional Benefit owed with respect to the Supplemental Plan. Thus, in total, the Claim seeks the Additional Benefit equal to approximately $322,758, plus interest.

On December 18, 2019, Mr. Matthew Hawes, counsel for the Plan ("ERISA Counsel") sent a letter to you explaining that Mr. Curtis was eligible to receive his Plan benefits using a January 1, 2020 annuity starting date or an August 1, 2019 retroactive annuity starting date ("RASD") (i.e., a RASD using Mr. Curtis's "Late Retirement Date" under the Plan). The December 18, 2019 letter also explained that the present value of Mr. Curtis's Plan benefit calculated using the August 1, 2019 RASD was higher than the present value of his benefit calculated using a January 1, 2020 annuity starting date—and was significantly higher than the present value of his benefit calculated using a May 1, 2015 RASD (presuming for purposes of the illustration that the RASD was available). Further, the letter explained that Mr. Curtis could submit new benefit forms using the August 1, 2019 RASD without prejudice to his claim for benefits.

Mr. Curtis subsequently submitted new benefit election forms, dated December 23, 2019 and December 28, 2019, for the Plan electing the August 1, 2019 RASD and with payments to commence January 1, 2020. Mr. Curtis again elected a qualified joint and 50% survivor annuity with his wife as the joint annuitant, but with a single retroactive payment equal to the monthly benefit amounts multiplied by five (for the five-month from period August 1, 2019 through December 31, 2019), in the following amounts:

| | |
|---|---|
| Supplement 4 (Joy Retirement Income Plan): | $5,863.99/month |
| Supplement 6 (American Longwall Retirement Plan): | $1,125.25/month |
| Retroactive payment (one-time payment): | $35,212.49 lump sum |

On February 26, 2020, ERISA Counsel sent a letter to you, asking if Mr. Curtis intended to pursue the Claim in light of the fact that he had commenced his benefits using the August 1, 2019 RASD, which provided a benefit that had a greater present value than a benefit with an annuity starting date of May 1, 2015 (assuming that a May 1, 2015 annuity starting date was even permitted under the terms of the Plan).

---

[3] Pursuant to the Supplemental Plan and Code Section 409A, Mr. Curtis was not entitled to elect when his Supplemental Plan benefits would begin.

By letter dated March 2, 2020, you informed ERISA Counsel that Mr. Curtis was not withdrawing the Claim. The March 2, 2020 letter also clarified that Mr. Curtis's Claim is not for a retroactive annuity starting date of May 1, 2015. Rather, Mr. Curtis's Claim is for the "Additional Benefit, irrespective of when Mr. Curtis began his annuity starting date" (emphasis added). The letter explained:

> Thus, . . . Mr. Curtis is entitled to payment of the Additional Benefit, which is defined as the sum of payments that would have been made to him *had he* retired in May 2015—54 months ago. The estimated monthly values in May 2015, Mr. Curtis's normal retirement date is as follows:
>
> | | | |
> |---|---|---|
> | Joy Global | $4,500 x 54 | $243,000 |
> | American Longwell | $997x54 | $53,838 |
> | Supplemental | $480x54 | $25,920 |
>
> These estimated amounts do not reflect the interest due as stated in the SPD.
>
> The fact that Mr. Curtis elected to receive his pension benefits using the August 1, 2019 retroactive annuity starting date does not address his entitlement to what the Plan calls an Additional Benefit because [Mr. Curtis's] Benefit Commencement Date is after [Mr. Curtis's] Normal Retirement Date.

By letter dated January 8, 2020, the period for responding to the Claim was extended by an additional 90 days. Accordingly, the decision from the Claims Fiduciary is due no later than April 13, 2020.

## DOCUMENTS REVIEWED

The following documents were reviewed as part of the evaluation of Mr. Curtis's claim for benefits:

1. Plan. The Komatsu U.S. Pension Plan, including Supplement 4 (formerly, the Joy Technologies Inc. Pension Plan for Salaried and Nonbargaining Hourly Employees) and Supplement 6 (formerly, the American Longwall, Inc. Retirement Plan).
2. Supplemental Plan. The Joy Global Supplemental Pension Plan.
3. Summary Plan Description for the Plan. The summary plan description for Supplement 4 of the Plan.
4. Retirement Kits for the Plan. Retirement Kits, dated July 25, 2019 for Supplement 4, and July 19, 2019 for Supplement 6, presenting Mr. Curtis's benefits payable pursuant to Supplement 4 and Supplement 6 and providing benefit election forms. As noted above, the two Retirement Kits are identical in material respects as they relate to the Claim.
5. August 7, 2019 and August 9, 2019 Emails. August 7, 2019 email from Plan Representative to Mr. Curtis, stating that the language in the Retirement Kits was "geared to participants that terminated prior to age 65" and who commenced payments after their Normal Retirement Date. The August 9, 2019 email reply from Mr. Curtis to the Plan Representative does not inquire any further about an "Additional Benefit."
6. Initial Benefit Election Forms for the Plan. Mr. Curtis's completed benefit election forms, dated August 13, 2019, electing pension benefits under Supplement 4 and Supplement 6 with an annuity starting date of January 1, 2020. The benefit election forms were included in the Retirement Kits.

7. <u>Quote Letter for the Supplemental Plan</u>. Correspondence dated July 30, 2019, from the Plan Representative to Mr. Curtis, describing the Supplemental Plan benefits payable to Mr. Curtis and including a form for electing the form for the payment of Mr. Curtis's benefits, which Mr. Curtis signed and dated August 13, 2019.

8. <u>Claim Letter</u>. Correspondence, dated October 11, 2019 and received October 16, 2019, from you to the Company, describing Mr. Curtis's claim for benefits under the Plan.

9. <u>Confirmation of Designated Representative Status</u>. Correspondence, dated November 7, 2019, from ERISA Counsel to you, requesting confirmation of your status as Mr. Curtis's designated representative with respect to the claim for benefits; and correspondence, dated November 14, 2019, from you to ERISA Counsel, confirming your status as Mr. Curtis's designated representative.

10. <u>Summary of Payment Options</u>. Correspondence, dated December 18, 2019, from ERISA Counsel to you, describing that Mr. Curtis was eligible to receive Plan benefits using a January 1, 2020 annuity starting date or an August 1, 2019 retroactive annuity starting date.

11. <u>Revised Benefit Election Forms for the Plan</u>. Mr. Curtis's revised benefit election forms for Supplement 4 and Supplement 6, dated December 23, 2019 and December 28, 2019, electing pension benefits using a retroactive annuity starting date of August 1, 2019.

12. <u>Miscellaneous Correspondence</u>. Correspondence, dated January 8, 2020, from ERISA Counsel to you, extending the deadline by which to respond to the claim for benefits from January 14, 2020 to April 13, 2020; correspondence, dated February 26, 2020 and March 2, 2020, between ERISA Counsel and you, confirming that Mr. Curtis is still seeking the claim for benefits despite the fact that Mr. Curtis's benefit payments had commenced January 1, 2020 using the August 1, 2019 RASD.

13. <u>U.S. Federal Income Tax Code of 1986, as amended (the "Internal Revenue Code" or "Code")</u>.

14. <u>Employee Retirement Income Security Act of 1974, as amended ("ERISA")</u>.

**APPLICABLE PLAN PROVISIONS**

The Plan is organized into Supplements that, among other things, apply to participants in plans that were previously merged with and into the Plan. Two of those Supplements, Supplement 4 and Supplement 6, apply to Mr. Curtis. Capitalized terms not otherwise defined shall have the meanings assigned in the applicable Plan.

Section 1.5(ww) of the Plan provides that "Normal Retirement Date" means "the first day of the month coinciding with or next following the day on which a Participant attains Normal Retirement Age." Section 1.5(vv) of the Plan and Section 1.4(o) of Supplement 4 of the Plan provide that "Normal Retirement Age" means age 65.

- Mr. Curtis's date of birth was April 25, 1950. Thus, based on these Plan provisions, Mr. Curtis's Normal Retirement Date was May 1, 2015.

Section 4.6(c) of the Plan provides that, "[i]f a Participant remains employed after his or her Normal Retirement Date, the Participant's benefit shall not become payable until the Participant's Late Retirement Date." Section 3.8(a) of Supplement 4 of the Plan provides nearly identical language.

- Because Mr. Curtis remained employed by Komatsu after his Normal Retirement Date, his Plan benefit was not payable until his Late Retirement Date.

Section 1.5(nn) of the Plan provides that "Late Retirement Date" is "the first day of the month coincident with or next following the date the Participant terminates from employment with all Controlled Group Affiliates after his or her Normal Retirement Date."

- Because Mr. Curtis retired on July 19, 2019, his Late Retirement Date was August 1, 2019.

Sections 4.2 and 4.6(c) of the Plan provide that a participant's benefit on his or her Late Retirement Date is equal to his or her Accrued Benefit determined as of the date of the participant's termination of employment, which, for each year of continued employment after his or her Normal Retirement Date, is increased by the greater of (i) any additional accruals for the year attributable to additional Vesting Service or Benefit Service, or (ii) an actuarial adjustment to reflect the value of the participant's benefit that otherwise would have been payable.

Section 3.8(b) of Supplement 4 of the Plan provides that the retirement benefit for a covered employee that becomes payable on a Late Retirement Payment Date shall be equal to his normal retirement benefit as determined under Supplement 4, and, for a covered employee who was credited with service on or after January 1, 1988, multiplied by a fraction equal to the covered employee's Years of Benefit Service through his Late Retirement Payment Date over his Years of Benefit Service up to his Normal Retirement Payment date (as adjusted). Section 3.8(e) further provides that in the case of a covered employee who remains employed after his or her Normal Retirement Date, such covered employee's Accrued Benefit shall be equal to his or her Accrued Benefit as of April 30, 2012 (the freeze date), increased by any applicable Benefit Service enhancements and further actuarially increased to reflect the delay in payment after the covered employee's Normal Retirement Date.

Section 3.2 of Supplement 6 of the Plan provides that when a covered employee retires after his Normal Retirement Date on a Supplement 6 Late Retirement Date, the monthly benefit beginning on his Late Retirement Date shall be an amount equal to the greater of his Accrued Benefit on the Late Retirement Date and his Accrued Benefit on his Normal Retirement Date increased by a late retirement factor determined based upon the number of years his payments begin after his Normal Retirement Date.

As a separate matter, there is no Plan language, or Supplemental Plan language, that provides that an Additional Benefit equal to the sum of monthly benefits that would have been paid from a participant's Normal Retirement Date to the date his or her benefits begin, will be paid to a participant who remains employed after his or her Normal Retirement Date.

Sections 3.2 and 3.6 of the Supplemental Plan provide that a participant's benefit under the Supplemental Plan "shall equal the Participant's retirement benefit calculated in accordance with the provisions of the [Plan] as if the Tax Limits were not in effect and as if the Participant did not have Deferred Compensation, and including any Supplemental Service, less the [Plan] Benefit and any Prior Plan Benefit" and that service and

compensation earned or paid after April 30, 2012 shall generally be disregarded in determining the amount of a participant's Supplemental Plan benefit.

## ANALYSIS

**Neither the Plan nor the Retirement Kits Provide for the Payment of Additional Benefit to Mr. Curtis.**
In his Claim, Mr. Curtis contends that he is owed an Additional Benefit equal to the sum of monthly payments he would have received had his benefits commenced on his Normal Retirement Date through the date his benefits actually commenced, plus interest. Mr. Curtis bases this contention on the following provision of the Retirement Kits:

> **Additional Benefit Due to Late Commencement** – an additional benefit will be payable to you because your Benefit Commencement Date is after your Normal Retirement Date. The Additional Benefit is the sum of payments which would have been made had you started the monthly benefit on your Normal Retirement Date, plus interest through your Benefit Commencement Date.

*The Plan Terms Do Not Provide for Additional Benefit.* There is no provision in the Plan that provides that a subsidy or any other "Additional Benefit" (under any other name) equal to the sum of monthly benefits that would have been paid from a participant's Normal Retirement Date to the date his or her pension benefits begin when the participant remains employed after his or her Normal Retirement Date.

Although the "Additional Benefit" described in the Retirement Kits is generally consistent with the Plan's provisions in Section 5.6(c) governing the retroactive annuity starting date,[4] the specific "Additional Benefit" described in the Retirement Kits is available only in instances where a participant elects a retroactive annuity starting date using his Normal Retirement Date for the calculation of his benefit. Such an election is permitted only if the participant terminates employment before his Normal Retirement Date[5] and, accordingly, is unavailable to Mr. Curtis. In any event, you clarified in your March 2, 2020 letter that Mr. Curtis's claim is not for a benefit with a retroactive annuity starting date to Mr. Curtis's Normal Retirement Date. Rather, you explained that Mr. Curtis is seeking the "Additional Benefit" *irrespective* of the annuity starting date used.

Sections 4.2 and 4.6 of the Plan, Section 3.8 of Supplement 4 of the Plan, and Section 3.2 of Supplement 6 of the Plan describe the calculation of the benefit payable to a participant who continues employment beyond his Normal Retirement Date and is entitled to a "Late Retirement Benefit" under the Plan. None of these provisions provide for the payment of the "Additional Amount" to Mr. Curtis, and, in any event, Mr. Curtis does not contend that his benefit was miscalculated under these provisions. Rather, his claim for benefits simply asserts an entitlement to the Additional Benefit based upon the description in the Retirement Kits. However, as stated above, the Plan text does not provide for this Additional Benefit, and, in accordance with ERISA

---

[4] If a participant elects a retroactive annuity starting date, the participant will receive future monthly benefits in the amount that he or she would have received had benefits actually commenced on the retroactive annuity starting date and a one-time make-up payment equal to the missed payments between the retroactive annuity starting date and the actual benefit commencement date, plus interest.

[5] Under Section 5.6(c) of the Plan, a participant may elect to have his or her benefit calculated using an annuity starting date that is the later of his or her Normal Retirement Date or the first day of the month following his or her termination of employment.

Section 404(a)(1)(D), the Plan must be administered in accordance with its terms. As a result, Mr. Curtis is not owed the Additional Benefit under the terms of the Plan.

*The Retirement Kits Are Not Summary Plan Description.* It is also worth noting that Mr. Curtis contends that the Retirement Kits are the summary plan description for the Plan. This is not correct. The Retirement Kits are ministerial and are used by the Plan Administrator to enable participants to elect the timing and form of benefits. The Plan's summary plan description does not contain any reference to the Additional Benefit (by that name or any other name) that is the subject of the claim for benefits. Thus, the summary plan description does not support Mr. Curtis's contention that he is entitled to the Additional Benefit. In any event, if the summary plan description did include a description of the Additional Benefit (which it most assuredly does not), the summary plan description cannot alter the terms of the Plan, which are governed by the Plan document.

*Mr. Curtis Was Advised that the "Additional Amounts" Paragraph in the Retirement Kit Did Not Apply to Him.* Mr. Curtis was made fully aware in July 2019 (prior to completing his initial benefit election forms and before his Late Retirement Date) that the paragraph in the Retirement Kits regarding the Additional Benefit did not apply to him. The Plan Representative notified Mr. Curtis on different occasions, including verbally and by email on August 7, 2019, that the description in the Retirement Kits did not apply to him. The Plan Representative informed Mr. Curtis that the paragraph instead was intended for participants who terminated employment before their Normal Retirement Date and commenced their pension benefits after their Normal Retirement Date.[6] Thus, Mr. Curtis was fully informed prior to completing his initial benefit election forms that he was not eligible for the Additional Benefit.

*All of the Benefit Amounts Payable to Mr. Curtis Under the Plan were Specifically Identified in the Retirement Kits.* Mr. Curtis's Claim takes the paragraph that is the foundation of his claim out of context. Pages 7 and 8 of the Retirement Kits list the specific benefit amounts that were payable to Mr. Curtis based on the different forms of payment available under the Plan. Importantly, pages 7 and 8 did not identify any entitlement to the Additional Benefit claimed by Mr. Curtis. In fact, the Retirement Kits did not identify any specific benefit amount payable to Mr. Curtis in the nature of the "Additional Amounts" that are the subject to the Claim. It stands to reason that if Mr. Curtis was owed the Additional Amount that he claims the Retirement Kits would have specifically identified the amount of the Additional Benefit as was done with respect to the benefit amount for each of the optional forms available to Mr. Curtis. Instead, the Retirement Kits do not identify the amount of the Additional Benefit, which is consistent with the fact that the Plan text does not provide for an entitlement to the Additional Benefit. Accordingly, when the full content of the Retirement Kits is considered, the Retirement Kits support a conclusion that Mr. Curtis is not entitled to the Additional Benefit.

### The Retirement Kits Do Not Apply to the Supplemental Plan and the Supplemental Plan Does Not Provide for an Additional Benefit.

Mr. Curtis does not make any specific argument concerning the Supplemental Plan benefit; thus, it must be assumed that he is relying on the paragraph in the Retirement Kits described above to contend that the

---

[6] An August 9, 2019 email reply from Mr. Curtis to the Plan Representative does not make any further inquiries about the Additional Benefit, indicating that Mr. Curtis understood the Plan Representative's explanation regarding the intention of the paragraph in the Retirement Kits.

Additional Benefit also applies to the Supplemental Plan. However, the paragraph in the Retirement Kits regarding the Additional Benefit that is the foundation for Mr. Curtis's claim was not part of the quote letter for the Supplemental Plan dated July 30, 2019.

Moreover, pursuant to Section 3.2 of the Supplemental Plan, Mr. Curtis is only entitled to receive a Supplemental Plan benefit equal to the amount he would have received under the Plan as if certain tax limits were not in effect (and certain other adjustments applied) reduced by the Plan benefit (and certain other Company benefits) that he might be entitled to receive. As described above, there is no provision in the Plan that provides for an entitlement to the Additional Benefit. Therefore, Mr. Curtis is not entitled to the Additional Benefit under the Supplemental Plan (either separately from the terms of the Plan or by incorporation of the terms of the Plan), and, as described above, the Retirement Kits provide no support for Mr. Curtis's assertions to the contrary.

### Conclusion

For the reasons set forth above, the Claims Fiduciary concluded that Mr. Curtis is not entitled to Additional Benefits under the Plans, and, accordingly, Mr. Curtis's Claim is denied.

### Appeal of a Denied Claim

This response represents the Claims Fiduciary's denial of Mr. Curtis's claim for benefits under the Plan's claims and appeals procedures. Mr. Curtis (on his own or through an authorized representative) is free to appeal this denial of the claim by complying with the procedures set forth in the Plan's claims and appeals procedures as described below. **IMPORTANT: Please note that any appeal must be filed in writing within 60 days from the date this letter is received.**

To successfully appeal the denial of the claim for benefits, Mr. Curtis must be able to demonstrate that he is entitled to a benefit under the explicit terms of the Plan. For example, with regard to his claim, Mr. Curtis must establish that an Additional Benefit is owed to him. In deciding whether to appeal the denied claim or in preparing such an appeal, there are a few points that you should know about the Plan's claims and appeals procedures.

- Opportunity to Submit Comments and Information. Mr. Curtis may submit written comments, documents, records and other information relating to his appeal. The appeal should state all of the facts upon which the appeal is based. All submitted information will be considered on appeal, even if the information was not considered in evaluating the initial claim for benefits.

- Reasonable Access to Information. Mr. Curtis will be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other relevant information (including a copy of the Plan document).

- Timing of Decision on Appeal. The appeals fiduciary generally is required to make a determination within 60 days of the date that it receives notice of an appeal. However, the appeals fiduciary may extend the period for making a determination for up to an additional 60 days if there are special circumstances that require additional time to adequately evaluate the appeal, in which case the

appeals fiduciary will provide notice before the end of the first 60-day period and an explanation of why additional time is needed to consider the appeal.

- Right to Bring Claim in Federal Court. If Mr. Curtis's claim is denied on appeal, he will have the right to bring a civil action for benefits in federal court in Milwaukee, Wisconsin under ERISA Section 502. The U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division has exclusive jurisdiction for any lawsuit involving the Plan.

- Time Limits for Bringing a Claim in Court. Mr. Curtis must exhaust the Plan's claims and appeals procedures before he files a lawsuit, and any such lawsuit must be brought in a timely manner. As described above, Mr. Curtis must appeal this initial denial of his claim within 60 days of the date this denial letter is received. If he timely appeals the denial of his initial claim and the appeals fiduciary denies his appeal, any lawsuit must be filed no later than 24 months after the earliest of (1) the date the first benefit payment was made or due; (2) the date the plan administrator or its delegate first denied a request for a Plan benefit; and (3) the first date he knew or should have known the material facts on which the lawsuit is based (the "24-month Claims Period"). However, if Mr. Curtis filed a claim for benefits under the Plan's claims and appeals procedures within the 24-month Claims Period, the deadline to file a lawsuit will not expire until the last day of the 24-month Claims Period or, if later, three months after the final notice of denial of the appeal claim is sent by the appeals fiduciary. If Mr. Curtis files a lawsuit without timely appealing the initial denial of the Claim within the 60-day appeal period, or if he files a lawsuit after the end of the 24-month Claims Period (or, if later, the date that is three months after the appeal fiduciary's denial of the appeal), such action will be subject to all defenses that may be asserted, including defenses that Mr. Curtis failed to exhaust the Plan's claims and appeals procedures and that his Claim is time-barred.

If you have any questions about the Claims Fiduciary's decision or the Plan procedures for appealing a denied claim, please contact ERISA Counsel at the following address:

Morgan, Lewis & Bockius LLP
One Oxford Center, 32nd Floor
Pittsburgh, PA 15219
Attn: Matthew Hawes, Esq.

Sincerely,

*[signature]*

Matthew Stuart
Claims Fiduciary, on behalf of the
Claims and Appeals Subcommittee of the
Komatsu Pension and Investment Committee